UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **MITZI C. GATTIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-05-S-2463-NE** |
| ) | |
| **SCOTTSBORO BOARD OF EDUCATION,** ) ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This opinion addresses defendant's amended motion for judgment as a matter of law or, in the alternative, motion for new trial (doc. no. 57), and plaintiff's motion for equitable relief post-trial (doc. no. 58) and motion to strike (doc. no. 63). An evidentiary hearing on these motions was conducted on February 13, 2008. As a result of the evidence introduced at the hearing, as well as consideration of the parties' briefs, the court makes the following findings and conclusions.

### I. MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant argues that there was insufficient evidence for the jury to conclude reasonably that gender was a determinative factor in the decision to promote a male, Coach Scott Keeling, over plaintiff, Mitzi Gattis, for the position of Special Education Director. The arguments relied upon by defendant were the very

arguments presented to, and rejected by, a jury in this highly contentious and factually disputed case. Based on the evidence presented, the jury was entitled to believe that defendant had intended to promote Scott Keeling over all female applicants for the Special Education Director position, including plaintiff Mitzi Gattis. Plaintiff's theory was that the interview process was a sham, and that the scores given to her were not reflective of the substantive answers she gave. Further, plaintiff showed the lengths to which defendant went in order to disregard the female whose score was the highest after the interview process, Shannon Hess, and to instead award the promotion to Coach Keeling. Shannon Hess not only scored well in the interview, but her references were sterling. Defendant's Superintendent of Education maintained, however, that Ms. Hess's references were not good, and raised concerns to prevent Ms. Hess from being awarded the position. Seeing Ms. Hess testify, along with one of her references, and reading the glowing letters of reference submitted on her behalf, allowed the jury to credit plaintiff's theory that Coach Keeling was going to be promoted to the contested position, regardless of the qualifications of other applicants.

If the interview process was a sham, as the jury obviously concluded, then the mere fact that plaintiff scored lower than Coach Keeling is not dispositive. Plaintiff introduced evidence showing that her answers to interview questions deserved higher

scores, and that Coach Keeling did not deserve some of the scores he received. While defendant disputes this finding, it was a finding that the jury was entitled to make.

Plaintiff introduced evidence showing that her extensive experience in special education made her much more qualified than Scott Keeling for the position of Director of Special Education. Plaintiff also pointed out that the criteria used by defendant for selecting a new Special Education Director was changed just for this particular application process, and that previous Directors were required to have experience in teaching special education students. While it is true that employers are allowed to determine the requirements for any job, employers are not allowed to skew requirements for the purpose of unlawful discrimination. That is what plaintiff alleged defendant did in this case. By changing the previous *requirement* for special education experience into merely a "preference," and declaring administrative experience to be "required," defendant was able to eliminate all internal female applicants from the pool of "qualified" applicants.

Plaintiff further pointed out that defendant failed to comply with state regulations when posting the announcement for this position, and never revealed a job description — thus making the case in front of the jury that the job description was whatever defendant wanted to say it was on the day of trial. When the court asked defendant to produce a copy of the job description for this position in front of

the jury, none ever was tendered. Plaintiff properly alluded to the missing job description in closing argument — an argument that was not objected to by defendant. The absence of a written job description was precisely the point plaintiff tried to make in front of the jury: *i.e.*, that the selection process was a sham, and that criteria were manipulated for the purpose of insuring that Coach Keeling received the position over any female applicant. A reasonable jury would have been allowed to draw this conclusion, and it did.

Defendant makes much of the fact that female applicants were ranked the highest (Shannon Hess) and third-highest (Melanie Geiger) following the interview process, and that plaintiff received the lowest composite score. Defendant argues that plaintiff would not have been promoted in any event, and so it is entitled to judgment as a matter of law. First, this argument presupposes the validity of the interview process: a supposition that plaintiff disputed at trial. Second, it is clear that the interview scores were not dispositive — and, thus, cannot be found to have eliminated plaintiff — since the highest scoring individual with sterling references was not selected for the position. Given that such an excellent candidate as Shannon Hess was cast aside by defendant, despite her impeccable credentials and highest scores during an interview, who is to say that Melanie Geiger or any other female would have been next in line to receive the position if Coach Keeling had not?

Upon review of the evidence presented to the jury, the court concludes that sufficient evidence existed to support the jury's determination that plaintiff was not promoted on the basis of her gender. Defendant's motion for judgment as a matter of law is due to be denied.

## II.  ALTERNATIVE MOTION FOR NEW TRIAL

Defendant makes two arguments in support of a new trial. First, defendant complains of the admission of post-selection evidence, in the form of testimony concerning how much assistance Coach Keeling required in the areas of special education after assuming the position of Special Education Director. This evidence was admitted after Superintendent Berry explained why, in her opinion, administrative experience was a more valuable trait to possess than prior experience or educational certifications in that specialized discipline: *i.e.*, special education can be learned. To rebut that testimony, the court allowed plaintiff to introduce evidence indicating that Coach Keeling was not "learning" special education after being promoted to the position of Director, but assigning those duties to special education teachers and offering supplements for performing that part of the Director's position. The court finds this was proper rebuttal evidence, and that it should have been allowed, because it goes directly to the credibility of defendant's rationalization for promoting a football coach over someone experienced and certified in the skills of

special education as Director.

Defendant also complains about the fact that the court refused to instruct the jury on a *Mount Healthy*, mixed-motives (or "same decision") affirmative defense. The court refused to give such an instruction because defendant failed to request that affirmative defense at the pretrial conference or in the pretrial order; indeed, defendant expressly disavowed that theory of defense in its pretrial brief.[1]  Having conducted an entire trial with the understanding that a mixed motives defense was not applicable, it would have been incongruous for the court to then instruct the jury. Accordingly, defendant's motion for new trial is due to be denied.

## III.  PLAINTIFF'S MOTION FOR EQUITABLE RELIEF

**A.     Back Pay Damages**

During trial, the court made clear to the parties that it would determine the issues of equitable relief after a verdict had been rendered.  The court asked the jury to answer one question concerning the amount of back pay as advisory only, and so informed the parties.  The jury found that plaintiff was entitled to receive $70,000 in back pay.[2]  The court scheduled an evidentiary hearing on all post trial motions, and

---

[1] *See* doc. no. 39 (pretrial brief) at 6 ("At first glance, this may appear to be an issue of mixed motive.  It is not.").

[2] *See* doc. no. 54 (jury verdict) at 2.

considered evidence that the parties presented.[3]

In her motion for equitable relief, plaintiff requests back pay in the amount awarded by the jury. Defendant challenges the back pay calculation presented by plaintiff and accepted by the advisory jury because it was based on an incorrect assumption. Defendant introduced the testimony of Connie Roberts, the Chief Financial Officer for the Scottsboro school system. Ms. Roberts began her employment with defendant in January 2003; prior to that time she was a state examiner of public accounts. Ms. Roberts explained that in the Salary Schedule for Federal Programs/Special Education Supervisor, the column designated "Years Exp." refers to years of experience as a supervisor. The Salary Schedule (effective 7/1/2005), introduced as part of Defendant's Exhibit 4, is reproduced below:

| YEARS EXP. | M.S.   | 6 YEARS | D.O.   |
|------------|--------|---------|--------|
| 21-24      | 75,453 | 79,980  | 84,779 |
| 18-20      | 73,973 | 78,412  | 83,116 |
| 15-17      | 72,523 | 76,874  | 81,487 |
| 12-14      | 71,101 | 75,367  | 79,889 |
| 9-11       | 69,707 | 73,889  | 78,322 |
| 6-8        | 68,340 | 72,440  | 76,787 |
| 3-5        | 67,000 | 71,020  | 75,281 |
| 0-2        | 65,686 | 69,627  | 73,805 |

---

[3] *See* doc. no. 70 (Order).

Because plaintiff had no previous administrative or supervisor experience, she would have been paid according to her certification (6 Year - AA Certification) at the 0-2 years of experience ("Years Exp.") level, or $69,627 per annum, had she received the promotion as Special Education Director in 2005.  According to Ms. Roberts, plaintiff's calculation of back pay was based on the erroneous assumption that the "Years Exp." column simply referred to years of experience in any capacity, including as a teacher.  Using the Salary Schedule (effective 7/1/2006) for the following year, introduced as part of Defendant's Exhibit 4, plaintiff would have been paid an annual salary of $73,109.[4]  Using the Salary Schedule (effective 7/1/2007) for the next succeeding school year, introduced as part of Defendant's Exhibit 4, plaintiff would have been paid an annual salary of $78,226.[5]

Ms. Roberts then testified that she calculated the total loss of salary using the Salary Schedules correctly through June 30 of this year and arrived at a back pay calculation of $50,936.[6]  This evidence was not rebutted by plaintiff.  The court finds this evidence to be credible and the correct amount.  Accordingly, plaintiff is entitled to back pay in the amount of $50,936.[7]

---

[4] *See* Def. Exhibit 4 (Salary Schedule effective 7/1/06).

[5] *See* Def. Exhibit 4 (Salary Schedule effective 7/1/07).

[6] *See* Def. Exhibit 6 (Back pay calculation).

[7] This amount does not offset or take into account any mandatory contribution toward retirement benefits paid by plaintiff or any contribution to be paid by the state or school system.

**B.     Placing Plaintiff in the Contested Position**

Plaintiff filed a post-trial motion for equitable relief asking this court to place her in the position of Special Education Director.[8] In the Statement of Damages filed by plaintiff prior to trial, however, and under the heading "Front Pay," she wrote: "The future effects of Defendant's discrimination will continue post-judgment, *particularly in light of the fact that placement* [of plaintiff] *in the position* [to] *which she should have been promoted . . . does not appear to be feasible.*"[9] Thus, in her Statement of Damages, plaintiff sought front pay "for a period of three years, or roughly $84,807."[10] Of course, front pay can only be awarded if instatement to the contested position is not, as plaintiff stated, "feasible." *See Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1339 (11th Cir. 1999). Front pay, like instatement, is a form of equitable relief to be determined by the court. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 847-48 (2001). It is an amount of money awarded after trial in lieu of, or until, instatement. *See id*. "In deciding whether to award front pay, rather than []instatement, courts look to whether 'discord and antagonism between the parties would render []instatement ineffective as a make-

---

[8] *See* doc. no. 58 (motion for equitable relief) at 2-3.

[9] Doc. no. 44 (Plaintiff's Statement of Damages) at 2 (emphasis and bracketed alterations supplied).

[10] *Id*.

whole remedy.'" *E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000) (quoting *Lewis v. Federal Prison Indus.*, 953 F.2d 1277, 1280 (11th Cir. 1992) (quoting *Goldstein v. Manhattan Indus.*, 758 F.2d 1435, 1449 (11th Cir. 1985)).

The testimony at trial illustrated clearly the discord and antagonism between the parties that could only be exacerbated if defendant was ordered to place plaintiff in the position of Special Education Director. The court is mindful of the fact that the position is currently filled by another individual. Displacing that individual with plaintiff would have further negative implications, not only in the way the school system operates, but it also would not be in the best interest of the students enrolled in the special education curriculum. This in no way detracts from plaintiff's commendable record as a special education teacher. But placing her in the position of Special Education Director, as plaintiff's own statement of damages recognized, is simply not "feasible."

**C.   Front Pay**

Front pay "is calculated to terminate on the date a victim of discrimination attains an opportunity to move to his 'rightful place' rather than on the date the order granting relief is entered." *James v. Stockham Valves and Fittings Co.*, 559 F.2d 310, 358 (5th Cir. 1977). Further, the front pay calculation is dependent upon the correct application of the Salary Schedule, as explained by Ms. Roberts, and must take into

account that plaintiff remains employed by defendant as a special education teacher. Thus, it may be appropriate to award plaintiff front pay in the form of the salary plaintiff would have received as Special Education Director until such point that the position becomes available. *See*, *e.g.*, *id.* ("[T]he court may exercise continuing jurisdiction over the case and make periodic back pay awards until the workers are promoted to the jobs their seniority and qualifications merit."). Although front pay calculations cannot be totally accurate because they are prospective and necessarily speculative in nature, courts must "employ intelligent guesswork" to arrive at the best answer, and can conduct further proceedings to make an appropriate determination. *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870-71 (5th Cir. 1991).

Plaintiff asks the court to award her $24,988.67 per year "for as many years as the Court, in the reasonable exercise of its discretion, deems fit."[11] This amount, as mentioned previously under the section discussing back pay, was based on an incorrect assumption of plaintiff's salary had she been promoted to the position of Special Education Director. Defendant provided a chart at the post-trial hearing that outlined the difference in pay between plaintiff's current position and that of Special Education Director for a period of up to three years and arrived at a total award of

---

[11]Doc. no. 58 (plaintiff's motion for equitable relief) at 3.

$69,030.[12]  This amount was not discounted to present value, and did not include any contributions by plaintiff or defendant toward a retirement plan; and did include any raises in pay.  The court notes, however, that in her Statement of Damages, plaintiff requested front pay for a period of three years.[13]  Although plaintiff may have been entitled to front pay for a much longer period of time, the award will be limited to the three year period requested by plaintiff prior to trial.  Although the amount submitted by defendant for a three-year-period did not include pay raises, it also was not discounted to present value and was not rebutted by plaintiff during the hearing.  Accordingly, plaintiff is entitled to an award of front pay in the amount of $69,030.[14]

### D. Retirement Benefits

Finally, plaintiff seeks retirement benefits in the amount of $1,693.13, for the three years since the discriminatory decision not to promote her, plus that same amount for as many years in the future as the court deems reasonable, not to exceed twenty-eight years.[15]  Defendant counters that this request is entirely based on speculation and points out that plaintiff would not have been eligible for retirement benefits because she has not yet retired.  Defendant also maintains that plaintiff relies

---

[12]*See* Def. Exhibit 7.

[13]*See* doc. no. 44 (plaintiff's Statement of Damages) at 2.

[14]This amount does not offset or take into account any mandatory contribution toward retirement benefits paid by plaintiff or any contribution to be paid by the state or school system.

[15]*See* doc. no. 58 (motion for equitable relief) at 2.

on hearsay evidence by referring to the "Retirement Benefit/DROP Calculator" found on the website maintained by the Retirement Systems of Alabama when attempting to calculate the difference in the retirement benefit she would have received, had she retired as Special Education Director.[16]

Lost retirement is a compensable form of relief. *See, e.g., Lee v. Macon County Board of Education*, 453 F.2d 1104, 1113-15 (5th Cir. 1971). Any lump sum award should also be reduced to its present value. *See, e.g., Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 620 (5th Cir. 1996). The chief impediment to awarding the appropriate amount in lost retirement benefits is the parties' failure or unwillingness to present evidence during the post-trial evidentiary hearing on the issue. Therefore, the court will conduct further proceedings if necessary to make the required determination. *Cf. Renau*, 945 F.2d at 871 (conducting further proceedings on the issue of front pay). Given the guidance by the court concerning the back pay and front pay awards, the court will invite the parties to submit, preferably by agreement, a proposed calculation of lost retirement benefits. The parties' briefs were not sufficient to address the appropriate retirement benefits to which plaintiff is entitled to receive. Thus, the court will require the parties to submit additional briefs and evidence, if necessary, on this issue that assume lost retirement will be awarded and that focus on

---

[16]*See* doc. no. 44 at 1-2 (Plaintiff's Statement of Damages).

the appropriate amount of that award. If the parties cannot agree to the appropriate lost retirement award, and further discovery on this single issue is required, the parties should also inform the court of that need as well.

### IV. PLAINTIFF'S MOTION TO STRIKE

The motion to strike focuses upon evidence that supported defendant's argument that instatement to the position of Special Education Director was not feasible. Plaintiff challenged defendant's affidavits as hearsay. Because this court determined the issue of instatement and front pay without using the challenged evidence, however, the motion to strike is due to be denied as moot.

### V. CONCLUSION

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 13th day of March, 2008.

_____
United States District Judge