FILED
2008 Jul-10 PM 02:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **MITZI C. GATTIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-05-S-2463-NE** |
| ) | |
| **SCOTTSBORO BOARD OF EDUCATION,** ) ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

This opinion addresses plaintiff's motion for reconsideration of that portion of this court's March 13, 2008 Order and Memorandum Opinion awarding equitable relief.[1] On April 16, 2008, this court entered a Memorandum Opinion and Order, finding that plaintiff's original back pay award of $50,936.00 would be increased by $6,823.00 for the 2007-2008 school year. The court also directed defendant to file a supplemental response to plaintiff's motion for reconsideration, addressing the amount of plaintiff's back pay for the 2004-2005 school year.[2] Defendant complied;[3] plaintiff filed a response to defendant's submission;[4] and defendant filed a reply.[5]

---

[1] Doc. no. 73. The March 13 Order is doc. no. 72. The March 13 Memorandum Opinion is doc. no. 71.

[2] Doc. no. 76 (Memorandum Opinion and Order).

[3] Doc. no. 77.

[4] Doc. no. 79.

[5] Doc. no. 81.

The court informed the parties that it would enter a final order amending the back pay award after considering the parties' supplemental submissions.

Upon review of the parties' supplemental filings, and in accordance with the Memorandum Opinion and Order entered on April 16, 2008, the court finds that plaintiff should be awarded back pay in the amount of $69,746.00, as set forth in Exhibit 2 to the Second Affidavit of Connie Roberts.[6]

The court rejects defendant's argument that the award should be reduced to $64,487.00, as set forth in Exhibit 3 to Roberts' Second Affidavit,[7] to account for a lower salary during the 2007-2008 school year. Roberts explains the reasoning behind this argument as follows:

> Had Gattis been placed in the position of Special Education Director, she would not have received a salary of $85,049 for the 2007-08 school year. Rather, she would have received a 9% raise, just as [Scott] Keeling received.
>
> When I drafted the salary schedule for the Special Education Director in July 2007, I first calculated Keeling's new salary. *He was set to receive the 7% state mandated raise and also received an additional 2% raise.* Accordingly, Keeling's salary was increased from $71,757 in 2006-07 to $78,316 in 2007-08. I then purposefully drafted the salary schedule so that $78,316 was the exact amount that a Special Education Director with Keeling['s] total years of overall experience (21-23 years) would make.

---

[6] Doc. no. 77, Exhibit A (Second Affidavit of Connie Roberts), at Exhibit 2.
[7] *See id.* at Exhibit 3.

>	Gattis would have been treated similarly. She would have received $73,109 in 2006-07 if she had been the Special Education Coordinator. *She would have received a 7% state mandated raise and an additional 2% raise* [presumably at the beginning of the 2007-08 school year]. With these two raises, her salary would have been $79,790. Accordingly, just as I did with Keeling, I would have drafted the salary schedule so that the applicable salary for Gattis would have been $79,790. Gattis's salary would not have increased to $85,049. Such an increase would have been nearly a 15% raise. The Board would not have given her such an increase, nor did it give such an increase to Keeling.
>
>	Accordingly, the correct calculation, using $79,790 as the salary for 2007-08, results in a total of $64,487 in back pay.[8]

The court cannot fully credit Roberts' testimony, as it is inconsistent with her prior affidavit. Roberts previously testified that she originally drafted the salary schedules for the 2007-2008 school year in a manner that compensated all employees, including administrators and supervisors, according to their total years of education experience, not just their years of administrative experience.[9] Roberts expressly acknowledged that the salary schedules for the 2007-2008 school year, as they were adopted in July of 2007, set Keeling's salary *based on his total years of service with the Board.*[10] She did not mention that Keeling's receipt of a nine-percent raise motivated her decision of where to place him on the salary schedule in July of 2007.

---

[8]Second Roberts Affidavit, at ¶¶ 8-11 (emphasis supplied).

[9]*See* doc. no. 76, at 3-4; First Roberts Affidavit, at ¶ 10.

[10]First Roberts Affidavit, at ¶ 10.

To the contrary, she stated that she did *not* take into account the state-mandated seven-percent raise when she drafted salary schedules in July 2007. In fact, her failure to include the state-mandated seven-percent pay raise in the July 2007 salary tables was the very reason she drafted amended 2007-2008 salary schedules, which were approved by the Board on February 4, 2008. Therefore, the court cannot accept defendant's argument that plaintiff should be awarded a salary of only $79,790.00 for the 2007-2008 school year. As more fully explained in this court's April 16, 2008 Memorandum Opinion and Order, the evidence establishes that, if plaintiff had received the Special Education Director position instead of Keeling, and if she had been compensated in the same manner as Keeling, she would have been placed on the salary schedule in July 2007 according to her total years of education experience. According to the salary schedule submitted by defendant, plaintiff's salary would have increased to $85,049.00 in July 2007, because she held more than twenty-one years of total education experience.

The court also is not persuaded by plaintiff's argument that she should be placed on the salary schedule according to her total years of education experience for *all* school years relevant to the back pay period. To the contrary, and as more fully explained in the court's April 16, 2008 Memorandum Opinion and Order, the evidence demonstrates that, if plaintiff had received the Special Education Director

4

position, she would have been compensated according to her years of administrative experience until July of 2007, when she would have begun being compensated according to her total years of education experience. Finally, for the reasons stated in defendant's reply submission,[11] the court rejects plaintiff's argument that defendant's back pay calculation did not include her compensation for the month of July 2005.

The court will reserve ruling on the issue of plaintiff's front pay. Defendant has proposed that, in lieu of front pay, plaintiff could begin receiving the salary she would have received as Special Education Director ($85,049.00) during the 2008-2009 school year. As long as she works and receives this salary for at least three more years (as she has represented she will do by requesting three years of front pay), her retirement benefits will be based upon her three years of pay at the level of a Special Education Director. At first blush, the court finds this approach to be a reasonable and practical solution that will eliminate the speculation and uncertainty inherent in calculating retirement benefits. Nonetheless, the court will receive and review plaintiff's response to this proposal before ruling on the issue of front pay.

Based on the foregoing, plaintiff's motion for reconsideration is GRANTED in part. That portion of this court's March 13, 2008 order that requires defendant to

---

[11]Doc. no. 81.

5

pay plaintiff $50,936.00 in back pay is RESCINDED.  Defendant is ORDERED to pay plaintiff $69,746.00 in back pay.  The court reserves ruling on the issue of front pay until receipt of further briefing by the parties.  Plaintiff is ORDERED to file a brief setting forth her calculation of retirement benefits, along with supporting argument and documentation, on or before July 24, 2008.  Plaintiff's brief must address defendant's proposal to begin paying her the salary she would have received as Special Education Director at the beginning of the 2007-08 school year, in lieu of a front pay award, and in lieu of an award of retirement benefits.  Defendant must file a response to plaintiff's brief on or before July 31, 2008.

The court understands that attorney's fees will continue to accrue until these issues are fully decided.  Accordingly, a briefing schedule on the issue of attorney fees will be established after a final ruling is entered on the issues of front pay and retirement benefits.

DONE this 10th day of July, 2008.

_____
United States District Judge